UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | No. 13 C 6664 |
| | Judge James B. Zagel |
| PAUL SCHIRO. | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Petitioner Paul Schiro's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence. For the following reasons, Petitioner's Motion is denied.

## I. BACKGROUND

In 2007, petitioner Paul Schiro ("Defendant" or "Schiro") and others were charged with racketeering activity and related crimes committed with the Chicago Outfit, an organized criminal enterprise. Schiro was presented at trial as a relatively minor player, a burglar for the Outfit who served as mobster Tony Spilotro's deputy in Phoenix, Arizona. Schiro was a childhood friend and, according to testimony, a trusted confidante of Spilotro. Evidence showed that Schiro began associating with the Outfit in the 1970's and reported to Joey "the Clown" Lombardo in addition to working closely with Spilotro. Various witnesses described Schiro as a "dangerous man," as being on the "payroll" of the Outfit, and as a minor participant in the 1986 murder of Emil Vaci in Phoenix, performing surveillance on the day of the murder.

The jury found Schiro guilty as charged but was unable to unanimously find him guilty of the murder of Emil Vaci. This Court found clear and convincing evidence supporting Schiro's involvement in that murder and sentenced Schiro to twenty years in prison on January 26, 2009. The Seventh Circuit affirmed the sentence, *United States v. Schiro*, 679 F.3d 521 (7th Cir. 2012), and the Supreme Court denied a writ of certiorari on October 1, 2012.

1

In the petition before the Court, Schiro argues that Paul Wagner, who represented Schiro at trial, provided ineffective assistance of counsel for failing to pursue a statute of limitations defense and a withdrawal defense at trial, and for failing to challenge the sufficiency of the evidence. Both Schiro and Wagner testified before this court in a series of hearings on the present petition.

## II. LEGAL STANDARD

Relief under 28 U.S.C. § 2255 "is available only in extraordinary situations, such as an error of constitutional or jurisdictional magnitude or where a fundamental defect has occurred," resulting in "a complete miscarriage of justice." *Blake v. United States,* 723 F.3d 870, 878-79 (7th Cir. 2013). Generally, before a court may consider a § 2255 petition, the claims must have been raised and exhausted on direct appeal, *Massaro v. United States,* 538 U.S. 500, 504 (2003), except that a petitioner may raise an ineffective assistance of counsel claim under § 2255 regardless of whether or not the petitioner could have raised the claim on direct appeal. *Id.*

Schiro's claim of ineffective assistance requires him to show 1) that counsel was deficient and 2) that this deficiency prejudiced him. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The deficiency prong requires that the petitioner demonstrate that counsel's performance fell below an objective standard of reasonableness. *Strickland*, 466 U.S. at 688. The prejudice prong requires a showing that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at 694. In assessing this claim, the court is highly deferential to counsel and observes "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," *Strickland,* 466 U.S. at 689. A failure to establish either deficient performance or prejudice dooms the claim, *Gant v. United States*, 627 F.3d 677, 682 (7th Cir. 2010) (citing *Eddmonds v. Peters*, 93 F.3d 1307, 1313 (7th Cir. 1996)),

and if the petitioner is unable to make a sufficient showing on one of the *Strickland* prongs, the court need not consider the other. *Strickland*, 466 U.S. at 697; *see Atkins v. Zenk*, 667 F.3d 939, 946 (7th Cir. 2012).

## III. DISCUSSION

### A. Statute of Limitations Defense

Defendant argues that his attorney was ineffective for failing to raise a statute of limitations defense since, in Defendant's view, he was charged with participating in a 1986 murder that clearly fell outside the five-year limitations period. However, this misstates the charge against Defendant, which was actually for agreeing to participate in racketeering activities that extended into the five-year period preceding the 2005 indictment. For example, in 2003 James Marcello attempted to obstruct justice by bribing Nicholas Calabrese in furtherance of the conspiracy. Because there was ample evidence that the conspiracy of which Schiro was found to be a part continued into the statutory period, Defendant's counsel could reasonably have believed that a statute of limitations defense was simply doomed to fail.

Instead, defense counsel elected to pursue a strategy of discrediting government witnesses and attacking the evidence that Defendant was connected to the Outfit. It is true that defense counsel could have pursued this strategy and offered a statute of limitations defense in the alternative. But counsel could just as easily have determined that a statute of limitations defense would dilute the defense's primary message to the jury—that Schiro was never involved with the Outfit at all. In this context, I find no evidence of deficient performance and defer to the trial counsel's reasonable professional judgment on this matter.

With respect to the prejudice prong of *Strickland*, the Seventh Circuit put to rest any notion that a statute of limitations defense could have impacted the outcome of this particular

3

case, stating in *United States v. Schiro*:

> "[A] statute of limitations for conspiracy does not begin to run until the conspiracy ends . . . and the separate conspiracy involving the Outfit continued into the statutory period, even if no predicate acts (crimes that constitute a pattern of racketeering activity) were committed during that period. But some were—namely, as the district judge found, obstructions by Calabrese and Marcello of the government's investigation of the Outfit.

679 F.3d 521, 528 (7th Cir. 2012). The Seventh Circuit went on to note that simply ceasing participation in a conspiracy is not sufficient to effectuate withdrawal from the conspiracy. *Id*. at 529. Therefore, the fact that Schiro may have ended his participation in the conspiracy without unequivocally communicating withdrawal to his co-conspirators would not place him outside the reach of the statute of limitations.[1]

Finally, I note that Schiro is mistaken when he argues that the fact that his counsel raised the limitations defense after trial "proves that he recognized it too late, and that the claim has merit." Attorneys regularly raise claims for the first time after trial for any number of reasons. Here, Wagner may well have revived a previously considered and discarded strategy for the appeal after he reasonably prioritized a different strategy at trial.

Because Schiro has not shown either deficient performance or likely prejudice, his statute of limitations claim fails.

**B. Withdrawal Defense**

Schiro next argues that Wagner failed to investigate and raise a withdrawal defense. The asserted grounds for that defense are his conversation with Outfit associate Richard Cleary near the end of 1986 in which Schiro indicated he was "through" with the Outfit and his disappearance into hiding in 1987. At the hearing, Schiro added that he also unambiguously told

---

[1] Schiro contends that he did unequivocally withdraw from the conspiracy. The government argues that he did not, but even if he did, it would have been difficult or impossible to prove given the lack of witnesses and the risks inherent in putting Schiro on the stand. I need not address the viability of a hypothetical withdrawal defense because the other arguments discussed below dispose of the issue.

4

Frank Schweihs and Joe Hansen that he "quit." Transcript of Hearing 2/1/2016, p. 17-18.

As with the statute of limitations defense discussed above, a withdrawal defense would have contradicted the trial strategy of denying Schiro's association with the Outfit. Any argument that Schiro withdrew from the conspiracy necessarily implies that he was involved in the conspiracy to begin with, or else requires the defense team to make the absurd claim that Schiro withdrew from a group of which he was never a member.[2] To be sure, defense counsel could have opted to pursue this argument in the alternative, but he made a reasonable and strategic decision not to do so.

The government also correctly points out that Schiro's petition does not explain whether Schiro himself would have testified about the alleged withdrawal, a strategy that poses obvious risks which a reasonable defense attorney might choose to forgo. As demonstrated in the evidentiary hearing related to this petition, there were numerous strategic reasons not to expose Schiro to cross-examination. For one, the government would have impeached him with the fact that he was convicted of a racketeering conspiracy in another case ("the Hanhardt case").[3] Indeed, at the hearing for this petition, Schiro was questioned on a host of issues revealing his knowledge of, involvement with and connections to the Outfit. These incriminating topics included his familiarity with the structure of the Outfit, the fact that he was trusted with information that Outfit associates were digging graves in the Arizona desert, and his assertion that Joseph Lombardo would have used him as a messenger (though Schiro claims this never actually happened). Transcript of Hearing 2/1/2016, p. 67-69, 80-81. Indeed, Schiro testified in

---

[2] *See* Transcript of Hearing 2/1/2016, p. 139 ("Q: You have to be in it to quit it, don't you, sir? A: I'm not in it. I never was in it. . . Q: But you're telling us that you quit something you weren't a member of, is that what you're telling us? A: Yeah, that's correct.").

[3] Schiro's fallibility as a witness is further illustrated by an exchange at the hearing on this petition. *See* Transcript of Hearing 2/1/2016, p. 107-108 (Schiro admits that he "probably didn't even read" the plea agreement in the Hanhardt case, adding, "I signed it but that's not what the truth is.").

these proceedings that after seeing his co-defendants testify during the trial, he agreed with his counsel that he should not testify.

I also note that Wagner credibly testified that he extensively prepared for this trial and carefully crafted his strategy of attacking the evidence and deflecting attention away from Schiro. Transcript of Hearing 2/22/2016, p. 7-9. Wagner also credibly testified that he considered the withdrawal defense but felt it would be counterproductive in this case, in part because he felt Schiro would not be a good witness on the stand. Transcript of Hearing 2/22/2016, p. 10-11. After having his recollection refreshed, Schiro also admitted that he conferred with Wagner about whether he should testify and agreed that he should not. Transcript of Hearing 2/1/2016, p. 154-56.

With these liabilities, Schiro's defense counsel could reasonably have determined that it would be a self-defeating strategy to put him on the stand to support a withdrawal defense. This is especially true in this case, since a withdrawal defense could have distracted the jury from the primary strategy distancing Schiro from the mob, and would have exposed Schiro to a life sentence for the murder of Emil Vaci. I decline to second guess Wagner's professional judgment as to his trial strategy. *See United States v. Williams,* 106 F.3d 1362, 1367 (7th Cir.1997) ("The *Strickland* test is highly deferential to counsel, presuming reasonable judgment and declining to second guess strategic choices.").

Schiro argues that Wagner mistakenly believed Schiro was not eligible for a withdrawal defense, which, if true, could constitute ineffective assistance. *See Hinton v. Alabama*, 134 S.Ct. 1081, 1089 (2014) ("An attorney's ignorance of a point of law that is fundamental to his case combined with his failure to perform basic research on that point is a quintessential example of unreasonable performance under *Strickland*") (citations omitted). Yet Wagner credibly testified

that he did consider the withdrawal defense and ultimately rejected it due to justifiable strategic concerns. Moreover, Wagner's testimony revealed that Schiro had withheld information from him and was very reticent to even discuss his relationship to the Chicago Outfit. Thus, even assuming *arguendo* that there may have been evidence to support a withdrawal defense, Wagner's performance is not deficient when viewed in light of the facts Schiro provided at the time. *See Strickland*, 466 U.S. at 689; *Koons v. U.S.*, 639 F.3d 348, 352-53 (7th Cir. 2011) ("[Defendant's] appeal is foreclosed by the fact that he never informed trial counsel of the facts" that he puts forth on appeal).

Furthermore, the fact that Schiro might have preferred a different strategy in hindsight does not establish ineffective assistance of counsel. *See Peterson v. United States*, 2016 WL 930653, at *2 (N.D. Ill. 2016) (Zagel, J.) ("A petitioner's dissatisfaction with his counsel's strategy, performance, or the outcome of the case is not sufficient to deem the representation constitutionally deficient"). Assuming *arguendo* that counsel's defense strategy was unsuccessful, that fact alone does not render his performance constitutionally ineffective. *United States v. Wilks*, 46 F.3d 640, 644 (7th Cir. 1995) ("[T]he Sixth Amendment does not guarantee a not guilty verdict. The mere fact that counsel's defense strategy was unsuccessful does not render counsel's assistance constitutionally ineffective."). Moreover, even if another strategy could have accomplished more, Wagner did successfully avoid a guilty verdict for the murder of Emil Vaci even though Schiro "participated substantially in the planning and surveillance that preceded the murder." *U.S. v. Schiro*, 679 F.3d at 534. Schiro may be dissatisfied with Wagner's performance, but it is not correct to call it wholly unsuccessful.

For these reasons, Wagner's decision not to use the withdrawal defense did not fall below objective standards of reasonableness.

**C. Failure to Challenge Sufficiency of the Evidence**

Finally, Schiro argues that his trial counsel did not challenge the sufficiency of the evidence. This assertion is not supported by the trial record. In fact, Schiro's trial counsel repeatedly attacked the evidence against him and twice requested an acquittal. The Seventh Circuit also dismissed the idea that the evidence against Schiro was insufficient to support the verdict. *U.S. v. Schiro*, 679 F.3d at 534 (noting that "no reasonable jury would have acquitted Schiro even if he had been tried by himself . . ., so ample was the evidence of his membership in the Outfit conspiracy.").

Relatedly, Schiro contends that the indictment against him did not properly allege a violation of 18 U.S.C. § 1962(d) by failing to describe which provision of Section 1962 he conspired to violate in Count One. To be sufficient, an indictment must state each element of the crimes charged, provide the defendant with adequate notice of the nature of the charges, and allow the defendant to raise the judgment as a bar to future prosecutions for the same offense. *U.S. v. Castaldi*, 547 F.3d 699, 703 (7th Cir. 2008). "[I]f an indictment has not been challenged at the trial level, it is immune from attack unless it is so obviously defective as not to charge the offense by any reasonable construction." *United States v. Cox*, 536 F.3d 723, 726 (7th Cir. 2008) (citations and internal quotations omitted). "[T]ardily challenged indictments should be construed liberally in favor of validity." *Id*.

Under this standard, Count One of the Third Superseding Indictment does properly state the allegations against the defendant and, in Paragraph 19, clearly identifies Section 1962(c) as the specific provision which Schiro and his co-defendants were charged with violating.

## IV. CONCLUSION

For the foregoing reasons, Petitioner's Motion is denied.

ENTER:

James B. Zagel
United States District Judge

DATE: November 8, 2016